### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### AT KANSAS CITY

| | |
|---|---|
| **PRAIRIE POINTE ORTHODONTICS, P.A.**, on behalf of itself and all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**SLEEP RESET, INC., d/b/a SLEEP RESET, YUNHA KIM, AND DR. ARETI VASSILOPOULOS,**<br><br>**Defendants.** | Case No. 2:25-cv-2053<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY DEMANDED** |

### CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)

Prairie Pointe Orthodontics, P.A., on behalf of itself and all other persons or entities similarly situated, hereby files this its Class Action Complaint against the Defendants, Sleep Reset Inc., d/b/a Sleep Reset, Yunha Kim, and Dr. Areti Vassilopoulos for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), and the regulations promulgated under the Act (hereinafter, "TCPA").

In February, 2025, Defendants created, approved, and sent unsolicited marketing faxes – advertising Sleep Reset's services – to the prospective Class Members without their prior express consent within the meaning of the TCPA (*See* **Ex. A** (the "Marketing Fax").)

### NATURE OF ACTION

1. This case involves the unauthorized and unsolicited transmission of facsimiles to Prairie Pointe Orthodontics, P.A. (hereinafter, "Prairie Pointe" or "Plaintiff") and the prospective

1

Class from Sleep Reset, Yunha Kim, and Dr. Areti Vassilopoulos (collectively, "Defendants") in violation of the TCPA, 47 U.S.C. § 227 *et seq.*

2. In February, 2025, Defendants created, approved, and sent unsolicited marketing faxes advertising Sleep Reset's services to the prospective Class Members without their prior express consent within the meaning of the TCPA (*See* **Ex. A** (the "Marketing Fax").) These junk faxes were illegal under the TCPA. Prairie Pointe is a dental practice in Kansas that received one of the faxes. Prairie Pointe has filed this lawsuit under the TCPA not just for itself, but also for a class of all recipients of these illegal faxes.

3. Prairie Pointe brings this action on behalf of itself and the Class for injunctive relief and statutory damages, all arising from the illegal activities of all Defendants.

## JURISDICTION AND VENUE

4. The claims of the prospective Class represented by Prairie Pointe under the provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005, and the regulations promulgated under the Act (hereinafter, "TCPA"). Therefore, this Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331.

5. This Court has subject matter jurisdiction over this case based on: (1) diversity of citizenship under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the citizenship of the parties is diverse; and (2) federal question jurisdiction per 28 U.S.C. § 1331 over Plaintiff's TCPA claims, which arise under federal law. This Court also may have jurisdiction under the Class Action Fairness Act.

6. This Court has specific personal jurisdiction over Defendants because Defendants

targeted consumers with advertisements in Kansas and this District, including to Plaintiff, which resides in Johnson County, Kansas. Defendants' marketing directed to residents of Kansas is the subject of this dispute from which this lawsuit arises.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the conduct and events giving rise to this case, the transmission of unsolicited fax advertisements directed to and received by residents of Kansas including those sent to Prairie Pointe, occurred in this District, and Prairie Pointe has its principal place of business in this District.

## PARTIES

8.  Plaintiff Prairie Pointe Orthodontics, P.A., is a domestic corporation of the state of Kansas, owned and operated by Dr. Eric Neuer. Among other business activities, Prairie Pointe Orthodontics, P.A. provides dental services to the residents of the State of Kansas.

9.  Defendant Sleep Reset, Inc., d/b/a Sleep Reset ("Sleep Reset") is a corporation organized under the laws of Delaware with its principal place of business located at 708 Long Bridge Street, #1609, San Francisco, California 94158. Sleep Reset also maintains a mailing address at 2261 Market Street, #4408, San Francisco, California 94114. Sleep Reset describes itself as "the world's first digital, personalized sleep clinic, which you can take anywhere in a convenient mobile app."

10. Its registered agent is listed as Yunha Kim, who is listed at the same address as Sleep Reset's principle place of business.

11. Defendant Yunha Kim is a natural person who is the Founder and Chief Executive Officer of Sleep Reset. Her name appears in the header as the sender of the Marketing Fax that was received by Plaintiff. Ms. Kim resides in California, and she can be served individually at 708 Long Bridge Street, #1609, San Francisco, California 94158.

3

12.     Defendant Dr. Areti Vassilopoulos is a natural person who is the Clinical Content Lead for Sleep Reset. Her name is listed as the author of the marketing message which appears on the first page of the Marketing Fax. Dr. Vassilopoulos resides in Connecticut and can be served at 120 Valley Road, North Branford, Connecticut 06471.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

13.     The Telephone Consumer Protection Act of 1991, Pub. L. 102-243, § 3(a), added Section 227 to Title 47 of the United States Code. 47 U.S.C. § 227 was last amended in 2005. In pertinent part, 47 U.S.C. § 227(b) provides "It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]"

14.     In pertinent part, 47 C.F.R. § 64.1200(a), a regulation prescribed under 47 U.S.C. § 227(b) and effective as of December 20, 1992, provides that "No person may . . . [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

15.     As used in both 47 U.S.C. § 227 and 47 C.F.R. 64.1200, "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission[.]" (47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(16).)

16.     Paragraph (3) of 47 U.S.C. § 227(b) provides:

(2)     **Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

17. The Junk Fax Prevention Act of 2005 ("JFPA") amended the TCPA to strengthen the prohibition against the sending of unsolicited advertisements. Following the JFPA, the TCPA requires that senders of faxed advertisements place a clear, conspicuous and particular notice (hereinafter, the "Opt-Out Notice") on the first page of the transmission giving owners of the telephone lines and fax machines the right, and means, to stop unwanted faxed advertisements.

18. Under the TCPA and associated regulations, a legally compliant Opt-Out Notice must contain the following:

(1) Conspicuous opt-out language on the first page (47 C.F.R. § 64.1200(a)(4)(iii)(A))

(2) A statement that the recipient may make a request to opt-out of receiving future faxed advertisements (47 C.F.R. § 64.1200(a)(4)(iii)(B).)

(3) A statement that the sender must honor a recipient's opt-out request within 30 days and that the sender's failure to do so is unlawful (47 C.F.R. § 64.1200(a)(4)(iii)(B).)

(4) Set forth the requirements for an effective opt-out request (47 C.F.R. § 64.1200(a)(4)(iii)(C)), including that, *inter alia*, the request must (a) identify the number of the fax machine to which the opt-out request relates; and (b) is complaint only if, after the initial opt-out request, the recipient does not provide express permission for the sender to send fax advertisements (*see* 47 C.F.R. § 64.1200(a)(4)(iv).)

(5) Provide a domestic contact telephone number and a fax number by which the recipient may transmit the opt-out request (47 C.F.R. § 64.1200(a)(4)(iii)(D)(1)) or, if those numbers are not toll-free, set out a separate cost-free mechanism for that purpose (47 C.F.R. § 64.1200(a)(4)(iii)(D)(2)).

(6) Ensure that the toll-free numbers or alternative cost-free mechanism permit the recipient to make an opt-out request 24 hours a day, 7 days per week. (47 C.F.R. § 64.1200(a)(4)(E).)

## ADDITIONAL FACTUAL ALLEGATIONS

19.     Prairie Pointe has, and at all relevant times had, fax service at (913) 393-3599 for its offices located at 10044 Woodland Road, Lenexa, Johnson County, Kansas.  Prairie Pointe receives facsimile transmissions ("faxes") at that number, using a telephone facsimile machine ("fax machine").

20.     On or about February 3, 2025, Prairie Pointe received on its fax machine from Defendants a hard copy advertising fax from sender "+14159036957 (Yunha Kim)" and addressed to "**Attention:** Medical Director," that promoted a product for sale called Sleep Reset which the fax claims "has proven to be an effective solution for addressing insomnia symptoms."  The Marketing Fax included a letter signed by Dr. Vassilopoulos which solicited Prairie Pointe to become one of Sleep Reset's healthcare provider partners, to visit its website at www.thesleepreset.com/partners/providers to obtain more information, and to scan a QR code that it could distribute to its patients.

21.     A true and correct copy of the Marketing Fax that Prairie Pointe received is attached hereto as **Exhibit A**.

22.     The website link on the Marketing Fax leads to a webpage operated by Sleep Reset. That webpage promotes Sleep Reset's services using third-party reviews and testimonials, and offers healthcare providers to utilize a number of services, including obtaining brochures for their clinic, a discount link for patients, an opportunity to conduct independent research with Sleep Reset's data, schedule an overview seminar for the provider's clinicians, and offers trial access to the Sleep Reset program.

23. The QR Code on the Marketing Fax links to another page with a www.thesleepreset.com domain. That page offers a sleep quiz and opportunity to partake in a "FREE 1-week trial ($37 value)," which requires, among other things, the user to enter their name and email credentials and to agree to Sleep Reset's Terms and Conditions and Privacy Policy in order to find out what "Personalized Program" it will offer.

24. The Marketing Fax received by Prairie Pointe from Defendants was wholly unsolicited.

25. There was no established business relationship between Prairie Pointe and Defendants at the time the faxes were sent to Prairie Pointe's fax machine.

26. Defendants are, and at all times mentioned herein were, "persons," as defined by 47 U.S.C. § 153(39).

27. Upon information and belief, Defendants paid for, authorized, and directed the unsolicited and unauthorized faxes to Prairie Pointe and members of the prospective Class.

28. The Marketing Fax contained in **Exhibit A** does not contain an Opt-Out Notice that complies with the requirements of 47 C.F.R. 64.1200(a)(4)(iii) as follows:

> (1) The Marketing Fax does not comply with the TCPA in multiple respects, including but not limited to the following failures: The Marketing Fax does not contain any, let alone "conspicuous" opt-out language on the first page in violation of 47 C.F.R. § 64.1200(a)(4)(iii)(A).

(2) The Marketing Fax does not contain a statement that the recipient may make a request to opt-out of receiving future faxed advertisements in violation of 47 C.F.R. § 64.1200(a)(4)(iii)(B).

(3) The Marketing Fax does not contain a statement that the sender must honor a recipient's opt-out request within 30 days and that the sender's failure to do so is unlawful in violation of 47 C.F.R. § 64.1200(a)(4)(iii)(B).

(4) The Marketing Fax does not set forth the requirements for an effective opt-out request (47 C.F.R. § 64.1200(a)(4)(iii)(C)), including that, inter alia, the request must (a) identify the number of the fax machine to which the opt-out request relates; and (b) is complaint only if, after the initial opt-out request, the recipient does not provide express permission for the sender to send fax advertisements, in violation of 47 C.F.R. § 64.1200(a)(4)(iv).)

(5) The Marketing Fax does not provide a domestic contact telephone number and a fax number by which the recipient may transmit the opt-out request in violation of 47 C.F.R. § 64.1200(a)(4)(iii)(D)(1).

(6) The Marketing Fax does not expressly state that the sender's failure to comply with the initial opt-out request is unlawful in violation of 47 C.F.R. § 64.1200(a)(4)(iii)(B).

29. Defendants, and/or their employees and/or agents, created the fax in **Exhibit A** and had the capability to control the contents thereof.

30. Defendants, and/or their employees and/or agents, determined the fax telephone numbers to which the fax contained in **Exhibit A** and substantially similar advertising faxes offering Defendants' business services were sent to Prairie Pointe and other recipients.

31. Defendants sent the fax transmissions of **Exhibit A** and substantially similar advertising faxes thousands of telephone facsimile machines located in Kansas and other states offering their business within the last four years prior to the filing of the Complaint.

32. Said transmissions of the fax contained in **Exhibit A** and substantially similar advertising faxes were made for the purpose of advertising the commercial availability of goods and services available from Defendants.

33. Prairie Pointe further alleges that in each instance Defendants did so willfully or knowingly.

34. Prairie Pointe further alleges on information and belief that in each instance Defendants had actual notice of participation, or a high degree of involvement, in a plan to transmit unsolicited advertisements to telephone facsimile machines (by, for example, knowing the that the transmitted faxes were advertisements or participating in preparing their content, providing or obtaining the fax telephone number of Prairie Pointe or other recipients, and knowing that Plaintiff and/or other recipients had not authorized the faxes' transmission by prior express invitation or permission).

35. Ms. Kim and Dr. Vassilopoulos are also each individually liable as senders of the Marketing Fax along with Sleep Reset, as each had direct, personal participation in or personally authorized the creation, content, and transmission of the Marketing Fax as part of blast fax marketing campaign.

36. Prairie Pointe therefore alleges that Defendants violated 47 U.S.C. § 227 and 47 C.F.R. § 64.1200.

37. Prairie Pointe suffered damages from the submission of this Marketing Fax, including but not limited to invasion of privacy, annoyance, the use and depletion of toner and ink on Prairie Pointe's hard copy fax machine, tying up of the fax line (preventing it temporarily from receiving legitimate fax communications), and the diversion of time and attention to the fax.

38. Indeed, fax transmission is a HIPAA-complaint means for medical providers to send and receive personal health information. It is therefore important to medical providers, like the Plaintiff, to keep these lines open and uncluttered in the interest of patient care.

## CLASS ACTION ALLEGATIONS

39. Pursuant to Fed. R. Civ. P. 23, Prairie Pointe brings this action on behalf of a prospective Class of individuals defined as follows:

> All persons, natural or otherwise, in the United States and its territories who: (1) from February 3, 2021 to the present; (2) were sent one or more telephone facsimile transmissions by or on behalf of Sleep Reset; (3) which advertised the commercial business services offered by Sleep Reset; (4) and which either:
>
> (a) did not advise that the sender's failure to comply within 30 days to a request to stop sending such faxes is unlawful; and/or
>
> (b) failed to set forth the requirements for an opt-out request stated in 47 C.F.R. 64.1200(a)(4)(v); and/or
>
> (c) failed to include both a fax number and a telephone number for the submission of opt-out requests.
>
> Excluded from the Class are: (1) Sleep Reset, Inc., Yunha Kim, Dr. Areti Vassilopoulos, and any entity in which Sleep Reset, Inc.. has a controlling interest, and their legal representatives, officers, directors, assignees, and successors, and any co-conspirators; and (2) any judge or justice to whom this action is assigned, together with any relative of such judge or justice within the third degree of relationship, and the spouse of any such person.

Plaintiff reserves the right to amend this proposed class definition and to pursue certification under an amended class definition(s) or for subclasses as warranted.

40. Prairie Pointe seeks certification of both a Rule 23(b)(3) damages class (for completed violations of the TCPA) and a Rule 23(b)(2) declaratory and injunctive relief class (as to ongoing or future violations of the TCPA by Defendants).

41. Prairie Pointe does not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the hundreds.

42. Prairie Pointe and all members of the prospective Class have been harmed by Defendants' acts, including, but not limited to, the invasion of their privacy, annoyance, waste of

time, depletion of their paper and ink, and the intrusion on their facsimile that occupied it from receiving legitimate communications.

43. Upon information and belief, Prairie Pointe alleges that noncompliant facsimile advertisements sent on behalf of the Defendants to advertise their products and services have been transmitted to thousands of telephone facsimile machines in Kansas and other states through an intentional and persistent course of conduct. Each such transmission constitutes a separate violation of the TCPA. Because the Class members are dispersed and are believed to number in the hundreds if not thousands, individual joinder is impractical in satisfaction of Fed. R. Civ. P. 23(a)(1). The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

44. Prairie Pointe's claims are typical of the claims. of the Class, as required by Fed. R. Civ. P. 23(a)(3), in that Prairie Pointe received an unsolicited facsimile advertisement from Defendants advertising goods and services for a commercial purpose during the proposed Class Period, the claims of Plaintiff and the Class arise from the same course of conduct by Defendants, and the relief sought is common.

45. The factual and legal bases of Defendants' misconduct are common to all members of the Class and represent a common cause of injury to Prairie Pointe and the prospective Class members.

46. Numerous questions of law and fact are common to the prospective Class and predominate over questions affecting only individual Class members, as required by Fed. R. Civ. P. 23(a)(2) and 23(b)(3). Such common questions include, but are not limited to:

(1) Whether Defendants had a business practice of sending unsolicited facsimile advertisements for its commercial goods and services in violation of the TCPA;

11

(2) Whether Sleep Reset was a "sender" of the faxes;

(3) Whether Yunha Kim or Dr. Areti Vassilopoulos are individually liable as senders of the faxes;

(4) Whether the unsolicited facsimile advertisements sent by Defendants contained an Opt-Out Notice that complies with the requirements of 47 C.F.R. 64.1200(a)(4)(iii), (iv), and (v);

(6) Whether Defendants harmed Prairie Pointe and the Class;

(7) Whether Prairie Pointe and the Class are entitled to damages and, if so, in what amount; and

(8) Whether Prairie Pointe and the Class are entitled to equitable and/or injunctive relief.

47. The Class is ascertainable, as the Class is defined using objective criteria and Class Members who received unsolicited facsimile advertisements from Defendants are easily identifiable based on existing telephone and other records maintained by and/or under the control of Defendant tracking their blast fax marketing activity.

48. Prairie Pointe will fairly and adequately represent and protect the interests of the Class, as required by Fed. R. Civ. P. 23(a)(4). Moreover, Prairie Pointe has retained counsel with substantial experience in the prosecution of nationwide class actions. Prairie Pointe and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Prairie Pointe nor its counsel has any interests adverse to those of the Class.

49. As to Rule 23(b)(2), Defendants have acted and continue to act in a manner common to the Class, namely the continued mass distribution of faxes that are non-compliant with the TCPA, such that equitable relief on a class basis is warranted.

## CAUSES OF ACTION

## FIRST COUNT

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

50. Prairie Pointe incorporates by reference the foregoing and subsequent paragraphs of this Complaint as if fully stated herein.

51. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

52. Defendants' violations of the TCPA alleged herein were knowing and willful.

53. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Prairie Pointe and each member of the Class are entitled to damages of at least $500 per violation, which may be trebled to $1,500 per violation under 47 U.S.C. § 227(b)(3) for knowing and willful violations.

54. Prairie Pointe and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Prairie Pointe and Class members are also entitled to an award of attorneys' fees and costs.

55. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Prairie Pointe and Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute that is deemed negligent, or $1,500.00 for each and every knowing and willful violation, pursuant to 47 U.S.C. § 227(b)(3).

56. Prairie Pointe and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

57. Defendants are liable for the reasons set forth above, including directly, as alter egos, or through principles of agency, ratification, and other forms of vicarious liability or joint venture liability.

## SECOND COUNT

### CIVIL CONSPIRACY TO VIOLATE THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.

58. Prairie Pointe incorporates by reference the foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

59. Defendants agreed among themselves to violate the TCPA and injure Prairie Pointe and Class members by conducting an illegal facsimile advertisement campaign to encourage Kansas residents to purchase Defendants' products and services.

60. Defendants created a website, directed and approved a facsimile to be sent to unsuspecting recipients, supervised the transmission thereof, and/or paid for these services, achieving the outcome of generating awareness of their services.

61. Defendants met in person and/or communicated by phone and email to achieve the objectives of the conspiracy.

62. Prairie Pointe and Class members were injured by the conspiracy in the form of the annoyance, burden, time, and expense of dealing with the unwanted, illegal facsimiles.

## PRAYER FOR RELIEF

WHEREFORE, Prairie Pointe respectfully requests that the Court grant Prairie Pointe and all prospective Class members the following relief:

(1) An order certifying this case under Rule 23(b)(2) and Rule 23(b)(3), including any appropriate class(es) or subclass(es), and appointing Prairie Pointe as class representative and undersigned counsel as class counsel.

(2) Declaratory relief that Defendants' faxes violated and continue to violate the TCPA, and injunctive relief prohibiting future violations of the TCPA;

(3) Judgment in favor of Prairie Pointe and the Class against Defendants, in an amount of $500.00 for each fax transmission in violation of the Telephone Consumer Protection Act, as well as trebling to $1,500 per violation for willful and knowing violations.

(4) Appropriate relief to the extent allowable by law, including but not limited to damages, declaratory relief, and injunctive relief.

(5) An award of attorneys' fees and costs to counsel for Prairie Pointe and the Class; and

(6) Such other relief as the Court deems just and proper.

Date: February 4, 2025                             Respectfully submitted,

*/s/ Richard S. Fisk*
Richard S. Fisk (KS Bar #23712)
Beam-Ward, Kruse, Wilson & Fletes, LLC
8645 College Blvd., Suite 250
Overland Park, KS 66210
(913) 339-6888
(913) 339-9653 (fax)
Email:   rfisk@bkwflaw.com

Joe P. Leniski, Jr. (TN Bar. No. 22891)*
Anthony Orlandi (TN Bar No. 33988)*
HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC
The Freedom Center
223 Rosa Parks Avenue, Suite 300
Nashville, Tennessee 37203
Telephone: (615) 800-6225
Email: joey@hsglawgroup.com
            tony@hsglawgroup.com

*\*Pro Hac Vice* Admission Forthcoming

*Attorneys for Prairie Pointe and the Proposed Class*